# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Asia Wheel Co., Ltd.

*Plaintiff-Appellant,*

ZC Rubber America Inc.,

*Plaintiff,*

v.

United States *and* Accuride Corporation,

*Defendant-Appellees.*

Appeal from the U.S. Court of International Trade
Case No. 1:23-cv-00143-GSK
Judge Gary S. Katzmann

## RESPONSE BRIEF OF DEFENDANT-APPELLEE
### Accuride Corporation

*Submitted by*
Roger Schagrin
Nicholas J. Birch
Schagrin Associates
900 Seventh Street NW, Suite 500,
Washington, DC 20001
202-223-1700
nbirch@schagrinassociates.com
*Counsel for Accuride Corporation*

December 15, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2025-1694 |
| **Short Case Caption** | Asia Wheel Co., Ltd. v. US |
| **Filing Party/Entity** | Accuride Corporation |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/15/2025

Signature: /s/ Roger B. Schagrin

Name: Roger B. Schagrin

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Accuride Corporation | | KKR & Co. Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Joseph A. Laroski , Jr., formerly of Schagrin Associates | Michelle Rose Avrutin, formerly of Schagrin Associates | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................ii

GLOSSARY ........................................................................................... v

STATEMENT OF RELATED CASES ..................................................... 1

STATEMENT OF THE CASE .................................................................. 2

SUMMARY OF THE ARGUMENT .......................................................... 8

ARGUMENT ........................................................................................ 10

   I.  Asia Wheel's Claims Regarding the Coverage of the Scope
      Impermissibly Ignore the Full Language of the Scope and of
      Commerce's Determinations ........................................................ 12

     a.  Commerce did not undertake a k(1) analysis .............................. 12

     b.  The full language of the scope shows Asia Wheel's claims to
        be without merit ..................................................................... 15

     c.  Commerce properly found that the scope was ambiguous as
        to a production process it did not address during the
        original investigations ............................................................ 21

  II.  Commerce Provided the Adequate Notice Required under
      U.S. Law; an Exhaustive List of All Possible Products
      Covered Was Never Required ...................................................... 27

     a.  Commerce provides a general description of the covered
        merchandise, which provides fair warning to importers ............ 27

     b.  Commerce properly declined to instruct CBP on how that
        agency should apply its independent authority .......................... 31

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ................. 38

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82 (Fed. Cir. 2012)........................................................21

*Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022)............................................36, 37

*Bell Supply Co., LLC v. United States*, 393 F. Supp. 3d 1229 (Ct. Int'l Trade 2019)......................................................22

*Bell Supply Co., LLC v. United States*, 888 F.3d 1222 (Fed. Cir. 2018) ..................................................................14

*Canadian Solar, Inc. v. United States*, 918 F.3d 909 (Fed. Cir. 2019) ......................................................................5

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021)............................................37, 38

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002)....................................................................15, 28

*Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068 (Fed. Cir. 2001) ..................................................................16

*King Supply Co., LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012) ...........................................................11, 15, 19

*Meridian Prods., LLC v. United States*, 851 F.3d 1375 (Fed. Cir. 2017) ..................................................................16

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006)....................................................................10

*Novosteel SA v. United States*, 284 F.3d 1261 (Fed. Cir. 2002).............11

*Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020) ..................................................................16

*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310 (Fed. Cir. 2024), *cert. denied sub nom. Saha Thai Steel Pipe Pub. Co. Ltd. v. Wheatland Tube Co.*, 145 S. Ct. 1309, 221 L. Ed. 2d 396 (2025) ............................................10, 11

*SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023) ................................................................ 16

*Star Pipe Prod. v. United States*, 981 F.3d 1067 (Fed. Cir. 2020) .......................................................................... 35, 36

*Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020) .......................................... 11, 32, 33, 34, 36, 38

*Vandewater Int'l Inc. v. United States*, 130 F.4th 981 (Fed. Cir. 2025) ...................................................................... 13

*Vietnam Finewood Co. Ltd. v. United States*, 633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023) ................................................ 16

*Worldwide Door Components, Inc. v. United States*, 119 F.4th 959 (Fed. Cir. 2024) .................................................... 11

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................ 11

19 U.S.C. § 1517(e) ............................................................ 34, 38

19 U.S.C. § 1671e(a)(2) ..................................................... 22, 28

19 U.S.C. § 1673e(a)(2) ..................................................... 22, 28

## Administrative Determinations

*Certain 'Steel Wheels From the People's Republic of China: Preliminary Determination of Sales at Less-Than-Fair-Value*, 83 Fed. Reg. 54,568 (Dep't Commerce Oct. 30, 2018) ............... 3

*Certain Steel Wheels From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 83 Fed. Reg. 17,798 (Dep't Commerce April 16, 2018) .................................... 17

## Regulations

19 C.F.R. § 351.225(k)(1) ............................................. 12, 13, 15

19 CFR § 351.225(k)(2) .......................................................... 13

19 CFR § 351.225(l) .................................. 31, 32, 33, 34, 35, 38

## Other Authorities

Statement of Administrative Action accompanying the
  Uruguay Round Agreements Act, Pub. L. No. 103-465, 108
  Stat. 4809, H. Doc. No. 103-316 (1994) ...................................................3

## <u>GLOSSARY</u>

| Term | Definition |
| --- | --- |
| AD | Antidumping |
| *Asia Wheel Brief* | Opening Brief of Plaintiff-Appellant (June 23, 2025) |
| *Bell Supply IV* | *Bell Supply Co., LLC v. United States*, 888 F.3d 1222 (Fed. Cir. 2018) |
| *Bell Supply VI* | *Bell Supply Co., LLC v. United States*, 393 F. Supp. 3d 1229 (Ct. Int'l Trade 2019) |
| CBP | U.S. Customs and Border Protection |
| *CIT Op.* | *Asia Wheel Co., Ltd. v. United States*, CIT Slip Op. 25-18, 762 F.Supp.3d 1316 (2025) |
| CVD | Countervailing Duty |
| EAPA | Enforce and Protect Act |
| *EAPA Initiation* | *Notice of Initiation of Investigation and Interim Measures - EAPA Case Number 7509* (CBP Nov. 23, 2020) |
| *Inv. Final Memo* | *Issues and Decision Memorandum for the Final Determination of the Less-Than-Fair-Value Investigation of Certain Steel Wheels from the People's Republic of China* (Dep't Commerce Mar. 21, 2019) |
| *Final Scope Memo* | *Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand* (Dep't Commerce June 7, 2023) |

Defendant-Appellee Accuride Corporation ("Accuride") respectfully submits this brief in response to the opening brief of Appellant Asia Wheel Co., Ltd. ("Asia Wheel") ("*Asia Wheel Brief*") in the appeal of the decision by the Court of International Trade (the "CIT") in *Asia Wheel Co., Ltd. v. United States*, CIT No. 23-143.

## STATEMENT OF RELATED CASES

In response to Fed. Cir. Rule 47.5(a), Accuride states that it is not aware of any other appeals in or from the same matter that is or has been before this or any other appellate court.

The U.S. Customs and Border Protection ("CBP") Enforce and Protect Act ("EAPA") determination regarding some merchandise at issue in this case, where CBP applied the scope ruling challenge in this case, has also been challenged before the CIT in *Vanguard Natl. Trailer Corp. v. United States* (CIT Case No. 24-00034). That case has been stayed by the CIT pending the final outcome of this appeal.

Asia Wheel and other parties have also appealed to this Court a CIT decision regarding similar issues but regarding a different product not subject to the antidumping ("AD") and countervailing duty ("CVD")

orders at issue here in *Asia Wheel Co., Ltd. v. United States* (Fed. Cir. Consol. Case No. 25-1689; companion case to this case).

## STATEMENT OF THE CASE

While the statement of the case presented in Asia Wheel's brief in chief (*see Asia Wheel Brief* at 3-12) is generally correct, it glosses over certain facts that are highly relevant to understanding actions taken by Commerce.

This case addresses a common situation that arises when foreign exporters are faced with AD and CVD orders in the United States— orders that are intended to alleviate the injury their unfairly traded exports cause to U.S. industries and workers. Increasingly, exporters of such unfairly traded merchandise attempt to elude the enforcement of those orders by moving their operations in the final steps to a third country to take advantage of the limitations of U.S. AD and CVD orders that address only exports from the first country. Those exporters then seek to continue virtually the same unfair trade practices with effectively the same merchandise, reviving the injury to U.S. producers and their workers. *See, e.g.*, Statement of Administrative Action accompanying the Uruguay Round Agreements Act, Pub. L. No. 103-

465, 108 Stat. 4809, H. Doc. No. 103-316 (1994), at 893 (expressing Congressional concern with the "relative eas{e}" with which foreign exporters could circumvent U.S. AD and CVD orders by establishing "screwdriver" finishing operations in a third country).

As background to this case, Asia Wheel's Chinese parent company, Zhejiang Jingu Co., Ltd. ("Zhejiang Jingu"), was a mandatory respondent in the AD and CVD investigations on certain steel wheels from China before Commerce. However, mid-investigations, Zhejiang Jingu suddenly withdrew its cooperation from Commerce and so chose to receive high adverse facts available AD and CVD rates as a fully noncooperative respondent (as did the other mandatory respondent). *See, e.g.*, *Certain Steel Wheels From the People's Republic of China: Preliminary Determination of Sales at Less-Than-Fair-Value*, 83 Fed. Reg. 54,568, 54,569 (Dep't Commerce Oct. 30, 2018) (noting Zhejiang Jingu's withdrawal of cooperation).

Why Zhejiang Jingu believed it could disregard the higher duty rates on its exports from China that its actions would certainly lead to soon became clear. Information through the market revealed that Zhejiang Jingu and the other Chinese respondent were shifting their

final production steps on the subject wheels (and wheels subject to other then-ongoing AD and CVD investigations in the United States) to third countries, including to Asia Wheel in Thailand. *See Issues and Decision Memorandum for the Final Determination of the Less-Than-Fair-Value Investigation of Certain Steel Wheels from the People's Republic of China* (Dep't Commerce Mar. 21, 2019), Appx077 and Appx080 ("*Inv. Final Memo*"). Discovering this, the domestic petitioners asked Commerce to clarify the scope language to state that such third-country processing did not remove the Chinese merchandise from the scope coverage, to cut off that route of circumvention. *See id.,* Appx077.

At the time, Commerce stated that its understanding of the question placed before it by the domestic petitioners was specific to the third-country finishing consisting of the assembly and painting of a wheel rim and wheel disc both from China. *Id.,* Appx080 ("We understand the petitioners to be arguing that 'the assembly and painting of steel wheels does not result in the substantial transformation of the rims and discs....'").

Commerce also rejected the argument by Zhejiang Jingu that it was too late in the investigations for Commerce to address that issue.

*Id.,* Appx081. Commerce stated that it had the information it needed to address this assembly of Chinese rims and discs and that parties had been given the opportunity to address that issue. *Id.*

Commerce also stated that it was not applying its "substantial transformation" test to address the issue of the origin of wheels made from a Chinese rim *or* disc. *Id.* Commerce pointed out that this Court has held that the substantial transformation test is not the only path for Commerce to make a country-of-origin determination *during* its investigations. *Id.*, Appx082 (citing to *Canadian Solar, Inc. v. United States*, 918 F.3d 909 (Fed. Cir. 2019)). But that substantial transformation test, Commerce further explained, *could* be applied in the future to answer other country of origin questions under the scope of these orders. *Inv. Final Memo*, Appx081.

Commerce also explained that it was making a minor adjustment to the proposed scope language from the domestic petitioners on the point it was then addressing. *Id.,* Appx082. Commerce therefore added "from China" to the "rim and disc" example listed in the scope language as third country processing that was unambiguously covered. *See Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand* (Dep't

Commerce June 7, 2023), Appx020 (the adopted scope language) ("*Final Scope Memo*"). Commerce did not, however, change the language that specified that the coverage of the scope is "including, but not limited to," that example. Instead, the scope states that "any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China" would not remove it from that coverage if performed in a third country. *Id.*

Also relevant was Zhejiang Jingu's involvement in another set of AD/CVD investigations before Commerce, on smaller trailer steel wheels. There also, a different domestic petitioner asked Commerce to add language to address Zhejiang Jingu's shift of production to Thailand in response to the AD/CVD investigations on Zhejiang Jingu's wheels from China. *See Asia Wheel Co., Ltd. v. United States*, CIT Slip Op. 25-18, Appx013-014 (the CIT's discussion of the trailer wheel cases) ("*CIT Op.*"). Commerce was even more explicit with Zhejiang Jingu in that instance (which came slightly after Commerce's response to Zhejiang Jingu's scope arguments in this case), stating that it did "not foreclose a further analysis of substantial transformation should a product be completed in a third country from a mix of rim and disc parts

from China and a third country," as it adopted nearly identical language about third-country processing and rim-and-disc wheels that it adopted here. *Id.*, Appx014.

Zhejiang Jingu ignored Commerce's warnings that further analysis would be required to address other types of third country processing than the rim-and-disc processing that Commerce did address during the investigations; choosing to shift its production to Thailand and independently claim that merchandise to be out of scope. *See Notice of Initiation of Investigation and Interim Measures - EAPA Case Number 7509* (CBP Nov. 23, 2020), Appx149 (CBP's findings that Zhejiang Jingu shifted its production in response to the AD/CVD orders) ("*EAPA Initiation*"). Zhejiang Jingu did not seek the scope ruling that would have provided that further analysis Commerce had stated would be necessary.

When various domestic wheel producers shared information with CBP that suggested Asia Wheel's facility in Thailand was in fact inoperable even while it shipped increasing volumes of wheels to the United States, CBP initiated multiple EAPA investigations to determine if Asia Wheel was evading AD/CVD orders by shipping

Chinese wheels. *See id.* at Appx145-146. After a site visit to Asia

Wheel's factory in Thailand by CBP's investigators found "no evidence

of recent steel wheel production at Asia Wheel," (*id.*, Appx149), Asia

Wheel finally sought the scope ruling at issue here, arguing that

because Asia Wheel did not produce wheels in Thailand from both a

Chinese rim and a Chinese disc, its merchandise was outside the scope

of these orders. *See, e.g., Request for Scope Ruling for Asia Wheel's Steel

Truck Wheels* (Feb. 11, 2021), Appx067.

## SUMMARY OF THE ARGUMENT

Here, Asia Wheel continues to challenge Commerce's ruling that

Asia Wheel's finishing of its Chinese parent's wheel parts in a third

country did not substantially transform that merchandise for purposes

of AD and CVD duties. As Commerce's ruling was fully supported by

substantial evidence, this Court should instead affirm Commerce's

determination and the judgement of the CIT.

Both Commerce and the CIT have correctly rejected Asia Wheel's

claims that Commerce had somehow previously ruled that this

processing removed the merchandise from the coverage of the AD and

CVD orders. Asia Wheel's arguments ignore both the plain language of

the scope that Commerce did adopt and Commerce's actual statements when it adopted that scope. Commerce had expressly addressed a different type of processing and explained that for the type of processing Asia Wheel now challenges Commerce on a different analysis would need to be undertaken in the future. When Asia Wheel ultimately had to request that analysis be performed, Commerce did so under its recognized authority to interpret general scope language. Asia Wheel has dropped all challenges to the actual outcome of that analysis.

Because Commerce properly set the general terms of the scope and later made a scope ruling under those terms, Asia Wheel's claims that it lacked adequate notice prior to Commerce's actions being challenged here are likewise without merit. Commerce gave the general notice that the processing in question could be found to be covered by the scope as is directed by the statute and this Court's precedent. Asia Wheel chose to ignore that notice until it was under investigation by CBP for evasion.

Asia Wheel now seeks to excuse its willful ignorance of the full scope coverage by asking this Court to direct Commerce to interfere with CBP's independent investigation of evasion and suspension of

liquidation under that investigation. As Congress empowered CBP to take those exact steps, Commerce had no option but to continue that suspension when it made an affirmative scope ruling, as has been recognized by this Court.

As Asia Wheel's claims lack merit on all points, this Court as well should affirm Commerce's scope ruling in full.

## ARGUMENT

This Court reviews the CIT's decisions regarding Commerce's scope determinations de novo. *See, e.g.*, *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310, 1322 (Fed. Cir. 2024), *cert. denied sub nom. Saha Thai Steel Pipe Pub. Co. Ltd. v. Wheatland Tube Co.*, 145 S. Ct. 1309, 221 L. Ed. 2d 396 (2025). However, this Court also gives "great weight to the informed opinion of the Court of International Trade…. Indeed, it is nearly always the starting point of our analysis." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (citation omitted).

In making a de novo review, this Court must affirm Commerce's determination unless the determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19

U.S.C. § 1516a(b)(1)(B)(i); *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308 (Fed. Cir. 2020) (en banc) (this Court "must uphold Commerce's determinations unless they are unsupported by substantial evidence on the record, or otherwise not in accordance with law"). This Court has also noted that "{a} party challenging Commerce's scope ruling under the substantial evidence standard 'has chosen a course with a high barrier to reversal.'" *Saha Thai*, 101 F.4th at 1323 (quoting *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012)). Additionally, as matters of scope are "particularly within the expertise and special competence of Commerce," "Commerce is entitled to substantial deference with regard to its interpretations of its own antidumping duty orders." *King Supply*, 674 F.3d at 1348.

Likewise, while the question of whether ambiguity existed in the scope language that Commerce has interpreted in a scope ruling "is a question of law reviewed de novo," (*Worldwide Door Components, Inc. v. United States*, 119 F.4th 959, 968 (Fed. Cir. 2024)), there is a "low threshold needed to show that Commerce {} justifiably found an ambiguity." *Novosteel SA v. United States*, 284 F.3d 1261, 1272 (Fed. Cir. 2002).

Here, the Commerce's scope ruling which Asia Wheel challenges was in fact consistent with the plain language of the scope in question and did not contradict Commerce's prior determination. The CIT's affirmation of Commerce's ruling is well-reasoned and provides a strong starting point for this Court to likewise affirm Commerce. For the reasons set out in this brief, in the CIT's opinion, and in Commerce's ruling, this Court should find that Asia Wheel's arguments to the contrary are without merit and so should likewise affirm Commerce's determination here.

## I. Asia Wheel's Claims Regarding the Coverage of the Scope Impermissibly Ignore the Full Language of the Scope and of Commerce's Determinations

### a. Commerce did not undertake a k(1) analysis

As a preliminary matter, Asia Wheel attempts to send this Court down an irrelevant path of analysis by claiming that the question here is one of scope interpretation under 19 C.F.R. § 351.225(k)(1). *See Asia Wheel Brief* at 18-19. But Commerce was explicit in its ruling that it was *not* performing a (k)(1) analysis under that regulation. *Final Scope Memo*, Appx042 ("we find it unnecessary to further analyze the criteria

set forth in 19 CFR 351.225(k)(1) or to consider the additional factors provided in 19 CFR 351.225(k)(2).").

As this Court has recognized, the first step for Commerce in making a scope ruling is to start with the "language of the order itself," a step "sometimes referred to as the '(k)(0)' inquiry because it precedes the analyses under sections (k)(1) and (k)(2) of Commerce's regulation." *Vandewater Int'l Inc. v. United States*, 130 F.4th 981, 985 (Fed. Cir. 2025).

The factors under 19 C.F.R. § 351.225(k)(1) (and the additional factors under subsection (k)(2)) assist Commerce in determining whether a *form* of merchandise falls within the scope coverage. But that was not the question before Commerce here. The form of the steel wheels exported by Asia Wheel were never argued to be some type of wheel physically different from those that were exported directly from China and unquestionably were covered by the orders. The question before Commerce was if, for purposes of the orders, those wheels should be considered to have *originated* in China or in Thailand.

This Court has held that to answer questions of origin for purposes of applying order coverage, Commerce is entitled to apply

Commerce's five-factor substantial transformation test. *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) ("*Bell Supply IV*"). Having found that the scope language here was ambiguous as to the proper determination of origin for the third-country mixed component wheels, Commerce applied that test and properly determined that the Chinese merchandise remained of Chinese origin. *See Final Scope Memo*, Appx033-042. Asia Wheel has dropped all of its challenges to Commerce's substantial transformation analysis. *Cf. CIT Op.*, Appx009-011 (the CIT's rejection of Asia Wheel's challenges to the substantial transformation test); *Final Scope Memo*, Appx033-042 (Commerce's rejection of Asia Wheel's substantial transformation arguments).

Thus, what Commerce in fact did here was to first undertake a (k)(0) analysis to determine that the scope language was ambiguous as to the question of origin now posed to it and then applied its substantial transformation test to answer that question. *See Final Scope Memo*, Appx026 ("The plain language of the scope is ambiguous as to the status of finished wheels processed in a third country from a mix of {wheel components}") and Appx033 ("the finished truck wheels Asia Wheel

manufactures in its facilities in Thailand … are not substantially transformed such that the third-country processing confers country of origin based on the totality of circumstances"). Those analytical steps were fully proper and consistent with guidance from this Court. No analysis of the (k)(1) factors need be undertaken as the only question placed before the agency was the question of origin.

b. *The full language of the scope shows Asia Wheel's claims to be without merit*

Asia Wheel correctly points out in its brief that the primary inquiry in interpreting the scope of an AD/CVD order must be the language of that scope itself. *See Asia Wheel Brief* at 18 (citing *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002)). However, Asia Wheel's arguments then ignore a necessary corollary to that principle of the primacy of the actual scope language: *all* of that scope language must be applied.

As this Court has stated, the scope of an order must be read so that *all* terms it contains are considered to be "informative and non-superfluous." *King Supply*, 674 F.3d at 1350. An interpretation of scope language that "renders {some} language mere surplusage" must be rejected. *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1073

(Fed. Cir. 2001). And this Court "will not read out {of the scope} a sentence intended by Commerce to be given effect." *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1383 (Fed. Cir. 2017).

As the CIT has tendered the principle: "{t}he court cannot accept an interpretation that renders {a term of the scope} meaningless and 'mere surplusage.'" *SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263, 1275 (Ct. Int'l Trade 2023). *See also, e.g.*, *Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1353 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020) (rejecting a reading of scope language that would require "reading out {a} term from the relevant scope language"); *Vietnam Finewood Co. Ltd. v. United States*, 633 F. Supp. 3d 1243, 1255 (Ct. Int'l Trade 2023) (rejecting an interpretation of scope language that "would render the phrase 'as described below' in the first sentence {of the scope} superfluous").

In its arguments here, as it argued before Commerce and the CIT, Asia Wheel continues to argue that the term in the scope that states that third-country processing that is covered by the scope of the orders is limited to "the welding and painting of rims and discs from China."

*See, e.g.*, *Asia Wheel Brief* at 25. But Asia Wheel has stridently ignored the full text of even *the sentence* it draws that phrase from:

> The scope includes rims and discs that have been further processed in a third country, ***including, but not limited to***, the welding and painting of rims and discs from China to form a steel wheel, ***or any other processing*** that would not otherwise remove the merchandise from the scope of the proceeding if performed in China.

*See Final Scope Memo*, Appx020 (emphasis added); *see also CIT Op.,* Appx007 ("The words 'including, but not limited to' would be rendered meaningless" under Asia Wheel's reading of the scope).

Commerce adopted that language at the request of domestic petitioners in the original AD/CVD investigations to *clarify* the scope coverage. *See Inv. Final Memo*, Appx077; *Final Scope Memo*, Appx023. From the beginning of Commerce's investigations into certain steel wheels from China, the language of the scope has covered wheel parts, both an outer wheel rim or an inner wheel disc, as well as the assembled wheel, whether exported assembled or as separate elements. *See Certain Steel Wheels From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 83 Fed. Reg. 17,798, 17,802 (Dep't Commerce April 16, 2018) (Commerce's notice of initiation: "The

merchandise subject to the investigation is certain on-the-road steel *wheels, discs, and rims*…" (emphasis added)). If Zhejiang Jingu/Asia Wheel had exported the wheel parts from China or wheels finished in China from those parts directly to the United States, that merchandise unambiguously would have been covered by the scope and subject to the AD/CVD duties.

When the further question of third-country finishing arose as exporters sought ways to elude the orders, Commerce addressed the question of a wheel produced from a Chinese rim and disc by issuing what it labeled a "Scope Clarification." *See Inv. Final Memo*, Appx077 ("Scope Clarification for Rims and Discs Processed in a Third Country"). In that clarification, Commerce recognized that "the scope of this investigation makes clear that steel wheels, discs, and rims from China are covered by the scope." *Id.*, Appx082.

As already noted above, Commerce specifically stated that the specific question it was addressing—based on how it read petitioners' request—in that clarification was for the assembly and painting of a Chinese rim together with a Chinese disc. *Id.*, Appx080 ("We understand the petitioners to be arguing…."). Therefore, Commerce

added that specific production process ("the welding and painting of rims and discs from China") to the scope language as one given example. *See Inv. Final Memo*, Appx077; *Final Scope Memo*, Appx023. This clarifying language was definite that the scope did cover Chinese rims and Chinese discs that had been processed in a third country before importation to the United States. But the full language Commerce included was also explicit that the coverage was *wider than and not limited to* that stated example of welding and painting of a rim and a disc from China.

As this Court has explained, clarification of scope language does "not change the scope of the order or alter its express terms." *King Supply*, 674 F.3d at 1351. Thus, Commerce's *clarification* cannot be understood to have changed the products covered by the scope, but instead only provided insight into what *some* of those covered products were. So, as Commerce there stated, the scope of the Order before and after the clarification covered "steel wheels, discs, and rims from China." *Inv. Final Memo*, Appx082.

By clarifying that the scope of the orders did in fact cover wheels finished in a third country from "rims and discs from China," Commerce

cannot be understood as having stated in any way that other types of third-country finishing of Chinese wheels, and rims and/or discs were *not* covered. Commerce was unambiguous on that point, including explicitly in the scope that coverage "includ{ed}, *but {was} not limited to*" merchandise produced through that particular series of manufacturing steps. The coverage also included "*any other* processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China." *Final Scope Memo*, Appx020 (emphasis added). "Any other" cannot mean "no other."

Asia Wheel argues that because Commerce added the term "from China" to "rims and discs" in the petitioners' proposed clarifying language, Commerce must be understood to at that time have been limiting the *entire* scope coverage to where both the rim and the disc were from China. *Asia Wheel Brief* at 27-28. But that claim ignores that the "from China" was purposefully placed by Commerce only *after* the unambiguous statement that the coverage of third-country processing *is "including, but not limited to"* that "from China" merchandise that was given as one example of covered third-country processing. *See Final Scope Memo*, Appx020 ("The scope includes rims and discs that have

been further processed in a third country, including, but not limited to, the welding and painting of rims and discs from China…"). Had Commerce in fact intended that the "from China" apply to all types of processing, it would have included that phrase to modify the "rims, discs, and wheels" that are given before the "including, but not limited to" phrase, not only to modify only the "rims and discs" example that comes only after the "not limited to."

Commerce's clear language was that the "rim and disc" "from China" were certainly covered, *not* that any other product was not covered. That Commerce affirmatively addressed one type of processing cannot be understood to mean that Commerce also meant that a different, unaddressed type of processing was not covered. *See, e.g., ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88 (Fed. Cir. 2012) ("The absence of one thing does not prove the opposite").

c. *Commerce properly found that the scope was ambiguous as to a production process it did not address during the original investigations*

Moreover, it is neither telling nor even surprising that Commerce would not attempt during the investigations to list all types of

21

merchandise and processing that were intended to be covered under the scope of the orders. On the contrary, it *is* expected that Commerce will need to continue to deal with questions of scope after an order has been issued.

The statute directs Commerce to provide as the scope of an AD or CVD order "a description of the subject merchandise, in such detail as the administering authority deems necessary." 19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2). Because the scope is set out only in the detail necessary at the time, it *is expected* that Commerce will return to the language and provide further interpretation as additional questions of scope coverage arise: "Issues arise regarding whether a product falls within the scope of an ADD or CVD order, in part because federal regulations require Commerce to write the descriptions in 'general terms.'" *Bell Supply Co., LLC v. United States*, 393 F. Supp. 3d 1229, 1236–37 (Ct. Int'l Trade 2019) ("*Bell Supply VI*").

That is what Commerce did here: returning to a question of scope and origin that had not been resolved during the investigations and then properly applying the analytic framework that has been approved by this Court for Commerce to answer a question of origin.

Asia Wheel argues that "Commerce did not state – or even suggest – that it was deferring the question" of mixed component wheels. *Asia Wheel Brief* at 25. But Asia Wheel fails to point to any authority that even suggests that Commerce must list all scope questions it is *not* answering at the time it makes an AD/CVD order and state that it is deferring those questions until later. That "exhaustive list" approach is not the standard recognized under the statute. U.S. law instead allows Commerce to provide a general description of the covered merchandise in the scope of an order and then return to interpret it as to specific questions as they arise.

Further, contrary to Asia Wheel's position, Commerce *was* specific in stating that the question it was answering at that time was what it "understand{s} the petitioners to be arguing." *Inv. Final Memo*, Appx80. Commerce answered the question it saw as timely set before it and stated that it was not applying other analyses—analyses that would be needed to answer other questions—at that time. *See id.*, Appx081 (Commerce's statement that it was making the scope clarification it did make under its authority to set the scope of an investigation "with

adequate clarity" and that other issues would instead require a substantial transformation analysis).

Asia Wheel also attempts to make much of what it claims is Commerce's "agreement" with Zhejiang Jingu in the scope clarification during the investigations. *See Asia Wheel Brief* at 20, 23, 25, 27. Asia Wheel claims that Commerce "agreed" with Asia Wheel's parent that the scope was limited only to the wheels produced from both a Chinese rim and Chinese disc. *Id.* at 20.

Yet nowhere in Commerce's statements at that time is found *any* agreement by the agency that the scope was limited in that way. *See Inv. Final Memo*, Appx082. What the agency *did* say was that it agreed that the proposed language of the clarification needed to be modified based on what Commerce understood the question before it at that time to be, and so it added the term "from China" only to the non-exhaustive example it was providing to answer that specific question. *Id.*

*Nowhere* in its memorandum from the investigations does Commerce suggest that Commerce's agreement went to any other point, particularly to other questions it was not then addressing regarding "rim or disc" wheels. Commerce agreed with what it stated it agreed

with, nothing more. *See CIT Op.*, Appx008 ("this agreement was limited to the addition of the qualifier "from China" to the non-exhaustive example …, not to the broader suggestion that the scope only covered wheels where both the rim and the disc were made in China").

That Commerce agreed only that the explicit inclusion of rim-and-disc wheels that it was answering specifically at that time was what needed to be modified is further demonstrated by the modification Commerce actually applied. Commerce applied the modifying phrase "from China" only to the example rim-and-disc wheel. That phrase was placed *only* after the statement that the scope was "including, but not limited to" the modified example. *Final Scope Memo*, Appx020. Had Commerce agreed that the entire scope coverage need be limited to "rims and discs from China" as Asia Wheel now claims, Commerce would have added "from China" to "rims and discs" *before* "including, but not limited to," not only *after* that expanding phrase.

Commerce certainly did not agree with all of Zhejiang Jingu's arguments as Asia Wheel now claims (*see e.g.*, *Inv. Final Memo*, Appx081 ("contrary to Zhejiang Jingu's claim…") and Appx082 ("Zhejiang Jingu's arguments are misplaced."). Commerce's agreement

was limited to the one example it understood it was addressing at that point: that it "understood the petitioners' statements…to be requesting that rims and discs from China…be included within scope." *Id.*, Appx082. As Asia Wheel's reading of the scope language does, Asia Wheel's reading of Commerce's scope clarification ruling reads out much of what Commerce actually said.

In the classification decision during the investigations, Commerce did not state nor agree with any statements that the scope was somehow limited only to the instances where both the rim and the disc were produced in China. Commerce instead stated multiple times what it understood the question it was then answering was and to state that merchandise under that question was indeed covered. Commerce also pointed out that other questions of coverage would require another analysis that it was not undertaking—and so was not answering other questions that required that analysis—at that time. Based on the facts before it, this Court must affirm Commerce's determination that the scope was not settled as to the question of mixed component wheels before the scope inquiry at issue here, and so Commerce properly used

its authority to address that ambiguity during the challenge scope inquiry.

## II. Commerce Provided the Adequate Notice Required under U.S. Law; an Exhaustive List of All Possible Products Covered Was Never Required

### a. *Commerce provides a general description of the covered merchandise, which provides fair warning to importers*

Asia Wheel's argument that importers lacked adequate notice before Commerce's scope inquiry on mixed component wheels relies in large part on Asia Wheel's claim that Commerce had indicated during the original investigations "that third-country wheels made with rims or discs from China (but not both) are outside the scope." *Asia Wheel Brief* at 37.

However, as set out above, Commerce made no such indication during the investigations. Commerce instead confirmed that wheels made from Chinese rims and discs were covered by the scope but declined to apply a substantial transformation analysis and address different wheels. Asia Wheel's claims of a lack of adequate notice are poised on Asia Wheel's deficient claims regarding Commerce's statements during the investigations and so are equally without merit.

Asia Wheel's argument that any possible notice that Commerce did give was limited to a "lone sentence" likewise lacks a basis in the facts or the law. *See id.* at 33. Asia Wheel essentially argues that, because Commerce did not explicitly name mixed component wheels among the production methods that were covered under the scope, Commerce failed to provide adequate notice that those wheels were covered.

That argument is contrary to the governing statute and guidance from this Court. As already discussed in this brief, the statute directs Commerce to issue a scope that provides "a description of the subject merchandise, in such detail as the administering authority deems necessary." 19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2). Commerce is not required to provide an exhaustive list of all forms and varieties of the merchandise that are and are not covered.

As this Court has recognized, after issuing a scope setting out the coverage in those general terms, Commerce has the authority to return to the scope to address questions of particular coverage as they arise in order to interpret and clarify that scope. *See, e.g.*, *Duferco*, 296 F.3d at 1096 ("scope orders must necessarily be written in general terms…and

the Commerce Department enjoys substantial freedom to interpret and clarify its antidumping orders;" quotation marks omitted).

Here, Commerce was clear from the beginning of the investigations that the scope had always included "wheels, discs, and rims" from China. Commerce then clarified that the covered wheels, rims, and discs included wheels, rims, and discs that had been processed further in a third country. Commerce provided an *explicitly* non-exhaustive example of welding and painting a Chinese rim to a Chinese disc as *one* instance of that coverage. Any reasonable importer would have been notified by these statements and by the purposefully expansive language of the scope that other Chinese discs or Chinese rims that *had not* been specifically addressed by Commerce could also be covered by a such scope—explicitly including those finished in a third country in other ways.

Whether Commerce's statement regarding potential future substantial transformation analyses during the original investigation was general or not is of no moment. *Cf. Asia Wheel Brief* at 34. Commerce's descriptions of the outer bounds of the scope at that point are *intended* to be general under the statute. Commerce did address the

one specific question it found properly before it at that point, set out general language that the coverage of the scope included "any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China," and declined to address other specific processing it was not then able to adequately address. *See Inv. Final Memo*, Appx079-082. More was not required for Commerce to later properly return to the question of other specific merchandise. As the CIT stated here,

> adequate notice is not the same as certainty that a product will or will not fall within the scope of an order…adequate notice need only allow an importer to reasonably interpret what merchandise is included in the order.

*CIT Op.*, Appx012.

As is the case with every AD/CVD order, importers of the subject merchandise here were given a general description of the subject merchandise and then provided with the opportunity to seek scope rulings from Commerce to further elucidate that scope as needed. Asia Wheel chose to act without seeking such clarification until forced to do so. This Court should not condone an excuse of willful ignorance under the pretense of a lack of adequate notice.

## b. Commerce properly declined to instruct CBP on how that agency should apply its independent authority

Having properly set out a general description of the coverage of the scope in the first place and then having properly returned to a question of the specific coverage when it arose—and having properly applied the substantial transformation test that has been approved by this Court to answer questions of origin—Commerce then properly applied its regulations in 19 CFR § 351.225(l) that govern the liquidation of entries following a scope determination. *See Final Scope Memo*, Appx044-047.

As was explained by the agency in its determination, section 225(l) sets out that Commerce will "continue suspension of liquidation if a final ruling finds the relevant products included within the scope." *Id.*, Appx044; *see also* 19 CFR § 351.225(l)(3) (prior version).[1] This is what Commerce properly did here, ordering CBP to continue the suspension of liquidations that CBP, under its own, independent authority, had

---

[1] The scope determination here was made under the pre-September 2021 version of section 351.225. *See, e.g.*, *CIT Op.*, Appx015, fn.1. However, as both the prior and current versions of section 225(l)(3) direct Commerce to continue any suspension of liquidation upon making an affirmative scope ruling, the outcome would be the same here regardless of the version that was applied.

already legally suspended as part of CBP's on-going EAPA investigation. *See, e.g., Final Scope Memo*, Appx048; *see also EAPA Initiation*, Appx150 (CBP's suspension).

This Court has held that the terms of § 351.225(l) are "clear and unambiguous;" and has rejected the application of "{a}ny other result {that} would also be inconsistent with 19 C.F.R. § 351.225(l)." *Sunpreme*, 946 F.3d at 1318. Commerce was *required* to apply section 225(l) as this Court has held in prior cases, and so, under the plain terms of that regulation, was *required* to continue the suspension CBP already had in place.

Asia Wheel points to no authority that states there are *any* instances where Commerce may ignore section 225(l) and terminate existing suspensions despite having made an affirmative scope ruling. *See Asia Wheel Brief* at 38-41. Instead, Asia Wheel attacks this Court's ruling in *Sunpreme* by claiming that its directive that section 225(l) be applied only when CBP has made an independent "determination" of coverage to suspend the liquidation. *See Asia Wheel Brief* at 42 (arguing that CBP here "was unable to determine" coverage).

Asia Wheel's argument improperly seeks to elevate a passing comment by the Court to binding precedent. While the Court did note in *Sunpreme* that CBP had made its own ministerial determination in that case that the goods in question were in-scope, entirely absent from the Court's decision is any reliance on that fact as essential to the outcome. *See Sunpreme*, 946 F.3d at 1317-18, 1321.

Instead, the Court straightforwardly explained that the proper question was whether CBP had properly suspended liquidation of entries, and, if so, then "subsection {225}(l)(3) instead *dictates* that the existing suspension 'will continue.'" *Id.* at 1319 (emphasis added). Nothing in *Sunpreme n*or in section 225(l) limits the directive of that regulation *only* to a certain type of suspension by CBP. Both instead direct Commerce to "continue suspension of liquidation" without limiting that directive.

Here, as Commerce correctly explained in its determination memo, CBP had already suspended liquidation of Asia Wheel's shipments under CBP's own wholly independent authority to investigate evasion of AD/CVD orders under the EAPA statute (19 U.S.C. § 1517(e)). *See Final Scope Memo*, Appx048; *see also EAPA*

*Initiation*, Appx150. The statute in fact *requires* that CBP suspend liquidation where it makes an affirmative interim EAPA determination. 19 U.S.C. § 1517(e)(1). That is what CBP did here. The standard for CBP to suspend liquidation under its EAPA authority is not a matter of CBP making a scope determination, but an entirely separate standard of CBP finding a reasonable suspicion of evasion. *See* 19 U.S.C. § 1517(e). But liquidation is still suspended.

Moreover, even if Asia Wheel's claim that *Sunpreme* required a coverage determination by CBP had any merit, CBP *expressly* made such a determination here during its EAPA investigation. *EAPA Initiation*, Appx148 (CBP holding that "the further processing in a third country of discs from China to form steel wheels would not remove the merchandise from the scope of the AD/CVD orders").

And so, as set out by this Court in *Sunpreme*, once CBP had suspended liquidation for the merchandise under its independent authority under the "reasonable suspicion" standard of 19 U.S.C. § 1517(e) or by making a ministerial coverage determination, section 225(l) gave Commerce no leeway to act in any way other than as Commerce did. Once Commerce made an affirmative scope

determination it had to instruct CBP to continue any existing suspensions.

This Court has held that independent authority given to CBP is not limited temporally by when Commerce applies its scope ruling authority. For example, in a 2020 decision, this Court addressed a challenge by an importer—parallel to Asia Wheel's challenge here—to Commerce's instruction in a scope determination to CBP to "{c}ontinue to suspend liquidation of entries;" which the importer argued "improperly assess{ed} duties on pre-initiation imports." *Star Pipe Prod. v. United States*, 981 F.3d 1067, 1078 (Fed. Cir. 2020). There, CBP had suspended liquidation under its own enforcement authority. This Court rejected the importer's argument for a number of reasons, and explained instead that,

> Even if…Commerce's liquidation instruction were clarified to state that it did not extend to pre-initiation entries, that would not impact or prevent CBP from pursuing an enforcement action under § 1592. 19 C.F.R. § 351.225(l)(3) only limits Commerce's authority to assess duties in the context of a scope inquiry; that regulation does not restrict CBP's authority under § 1592 to assess penalties for fraudulent or negligent violations. Regardless of Commerce's instruction to CBP … CBP may independently determine that Star Pipe was negligent or fraudulent in its

> failure to pay duties on its {entries}, even if those
> {entries} were imported prior to the initiation of
> the scope inquiry.

*Id.* at 1079. Further, in *Sunpreme*, this Court also held that CBP's suspension authority under 19 U.S.C. § 1500(c) was also not limited by when Commerce took a scope action. *Sunpreme*, 946 F.3d at 1318-1321.

Asia Wheel attempts to provide some underpinning for its argument by citing from the CIT's decision in *Aspects Furniture*. *See Asia Wheel Brief* at 40-41. But that determination is entirely inapposite. In *Aspects Furniture*, Commerce had made a *negative* scope ruling regarding certain merchandise when CBP had referred the question to Commerce. *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1267 (Ct. Int'l Trade 2022). There, CBP "apparently continued to include merchandise in the EAPA investigation that Commerce had deemed to be outside the scope of the Order." *Id. Aspects Furniture* did not address the proper steps when Commerce makes an *affirmative* scope determination or what *Commerce* should do following such a determination. The lower courts' holding in *Aspects Furniture* that CBP cannot ignore Commerce's directives provides no support for Asia

Wheel's argument that Commerce should be instructed to ignore CBP's actions here.

Asia Wheel then attempts to dismiss the relevance of another CIT decision in *Diamond Tools* by arguing that there the challenge was to "CBP's EAPA authority directly," not Commerce's scope ruling authority. *Asia Wheel Brief* at 42-43. Asia Wheel does not explain why the challenge to CBP's EAPA authority in *Aspects Furniture* is relevant here but a challenge to CBP's EAPA authority in *Diamond Tools* is not. *See id.*

In *Diamond Tools*, the CIT held that CBP's authority to suspend liquidations is not bound by Commerce's separate authority to take the same action in different circumstances. *See Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1344 (Ct. Int'l Trade 2021). The CIT explained that Commerce's determinations do not "diminish Customs' authority under the EAPA to apply Commerce's affirmative covered merchandise determination…." *Id.* at 1351. The court continued that allowing Commerce to dictate how CBP applies its statutory authority to conduct EAPA investigations would "contravene Congress' expressed intent for the statute…. Such an outcome would be contrary

to the congressional intent underlying the EAPA statute and Customs' ability to exercise its statutory authority." *Id*.

As noted above, CBP's authority to suspend liquidation in an EAPA investigation under 19 U.S.C. § 1517(e) is entirely independent of Commerce. CBP does not need to seek any approval from Commerce to apply that authority and CBP's actions are not under Commerce's review. Asia Wheel's argument that Commerce should be ordered by this Court to override CBP's actions would require this Court to first override Congress' statutory grant of independent suspension authority to CBP. This Court must refuse to take such action.

Instead, where CBP has exercised its independent authority to suspend liquidation and then Commerce makes an affirmative scope determination, *Sunpreme* and 19 C.F.R. §351.225(l) direct that Commerce must continue that suspension. Commerce correctly did so here, and that action should be affirmed by this Court.

## **CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

As was stated by the CIT, "Commerce's determination {here} is supported by substantial evidence and in accordance with law." *CIT Op.*, Appx015. Asia Wheel's claims that Commerce somehow limited the

scope of these orders in all instances by affirmatory answering the question of coverage in one instance lacks support in the facts of this case. Instead, Commerce properly provided the general description of the coverage as instructed by statute and stated expressly that this coverage was not limited to the one given example.

Because Commerce properly gave the necessary general guidance that all wheels, rims, and discs from China—including those further processed in a third country—were covered, it gave adequate notice to importers that rims or discs further processed in a third country were potentially covered. As also is anticipated under the statutory scheme, Commerce then addressed a different question of coverage when that question was properly placed before the agency and applied the approved analysis to reach an affirmative scope ruling on that question. Having done so, Commerce then made the obligatory decision to continue all pre-existing suspensions of liquidation of the merchandise.

As Commerce's actions were proper on all points and fully consistent with the statute, with Commerce's own regulations, and with this Court's decisions, we respectfully request that this Court reject the

arguments and claims made by Asia Wheel and sustain Commerce's scope determination on all points.

Respectfully submitted,

/s/ Roger Schagrin
Roger Schagrin
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 7th St. NW Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for Accuride Corporation*

Dated: December 15, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2025-1994

**Short Case Caption:**  <u>Asia Wheel Co., Ltd. v. US</u>

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes _7,723_ words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: _12/15/2025_

Signature:  <u>/s/ Roger Schagrin</u>

Name:  <u>Roger Schagrin</u>