2025-1694

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ASIA WHEEL CO., LTD.,

Plaintiff-Appellant,

ZC RUBBER AMERICA INC.,

Plaintiff,

v.

UNITED STATES,

Defendant-Appellee,

and

ACCURIDE CORP.,

Defendant-Appellee.

Appeal from the United States Court of International Trade
in Consol. Case No. 1:23-CV-00143
Judge Gary S. Katzmann

## REPLY BRIEF OF PLAINTIFF-APPELLANT

Jay C. Campbell
Cristina Cornejo
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to Plaintiff-Appellant Asia Wheel
Co., Ltd.

January 20, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2025-1689 |
| **Short Case Caption** | Asia Wheel Co., Ltd. v. US |
| **Filing Party/Entity** | Asia Wheel Co., Ltd. v. US |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/20/2026

Signature: /s/ Jay C. Campbell

Name: Jay C. Campbell

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Asia Wheel Co., Ltd. | | Zhejiang Jingu Co., Ltd., a publicly traded company in China, indirectly owns 99.99% of Asia Wheel Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Walter J. Spak, White & Case LLP | Chunfu Yan, White & Case LLP | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)      ☐  No      ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT ....................................................................................................3

I. THE GOVERNMENT AND ACCURIDE FAIL TO DEMONSTRATE THAT COMMERCE'S MISINTERPRETATION OF THE SCOPE SHOULD BE SUSTAINED ............................................................................3

    A. Commerce Determined in the Original AD/CVD Investigations that Wheels Made in a Third Country with Discs or Rims from China (But Not Both) Are Outside the Scope. ...............................................................................4

    B. The Record Lacks Substantial Evidence for Commerce's Claim That It Deferred Consideration of the "Rims or Discs from China" Scope Issue in the Original AD/CVD Investigations ...............................................................7

    C. Excluding Wheels Made with Rims or Discs from China (But Not Both) Is Not Inconsistent with the Full Scope Language .........9

    D. Contrary to Accuride's Argument, Commerce Did Analyze the (k)(1) Sources, as Required by the Regulations.......................11

II. THE GOVERNMENT AND ACCURIDE FAIL TO DEMONSTRATE THAT COMMERCE LAWFULLY DIRECTED CBP TO CONTINUE TO SUSPEND LIQUIDATION OF IMPORTS ENTERED BEFORE IMPORTERS HAD ADEQUATE NOTICE OF AD/CVD LIABILITY .................................12

i

A.  The Government and Accuride Mischaracterize Asia Wheel's Arguments Regarding Adequate Notice ........................................13

B.  Commerce Cannot Lawfully Apply Its Own Regulations in a Manner that Would Violate the Broader Due Process Principle of Adequate Notice .........................................................16

C.  Commerce, Not CBP, Has the Ultimate Authority To Determine Not Just Whether But *When* Imported Merchandise Became Subject to an AD/CVD Order ....................21

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aspects Furniture Int'l, Inc. v. United States*,
    607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) ......................................................25

*Diamond Tools Tech. LLC v. United States*,
    545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ......................................................24

*Mid Continent Nail Corp. v. United States*,
    725 F.3d 1295 (Fed. Cir. 2013) ...............................................................passim

*Star Pipe Prod. v. United States*,
    981 F.3d 1067 (Fed. Cir. 2020) .................................................................23, 24

*Superior Commercial Solutions LLC v. United States*,
    Court No. 24-cv-00052-JCG, Slip Op. 25-147 at 26 (Nov. 26, 2025) ...............25

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
    391 F. Supp. 3d 1301 (Ct. Int'l Trade 2019) ......................................................20

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
    983 F.3d 487 (Fed. Cir. 2020) ................................................................passim

## STATUTES AND REGULATIONS

19 U.S.C. § 1517(a)(3)................................................................22, 23, 24

19 U.S.C. § 1517(b)(4)(a)(i)...............................................................23, 24

19 U.S.C. § 1517(e) .........................................................................22, 25

19 U.S.C. § 1592..............................................................................23, 24

19 C.F.R. 351.225(c)(ii)(C)(2)................................................................18

19 C.F.R. § 351.225(d) ...........................................................................18

19 C.F.R. § 351.225(e)............................................................................18

19 C.F.R. § 351.225(k)(1)......................................................................4, 11

19 C.F.R. § 351.225(l) .......................................................................passim

## ADMINISTRATIVE DETERMINATIONS

*Aluminum Extrusions from the People's Republic of China,*
    81 Fed. Reg. 15,039 (Dep't Commerce Mar. 21, 2016) (*"Tai-Ao Initiation*
    *Notice"*).............................................................................................20

*Aluminum Extrusions from the People's Republic of China*,
    81 Fed. Reg. 79,444 (Dep't of Commerce Nov. 14, 2016) (*"Tai-Ao Preliminary*
    *Determination"*) ................................................................................20

*Certain Steel Trailer Wheels 12 to 16.5 Inches From the People's Republic of*
    *China: Antidumping Duty and Countervailing Duty Orders*,
    84 Fed. Reg. at 45,954 ....................................................................... 11

# INTRODUCTION

Plaintiff-Appellant, Asia Wheel Co., Ltd., ( "Plaintiff-Appellant" or "Asia Wheel") replies to the response briefs submitted by Defendant-Appellees the United States and U.S. Department of Commerce (collectively, the "Government") (ECF No. 24) ("Gov't. Response Br."), and Accuride Corporation ("Accuride" or "Petitioner") (ECF No. 23) ("Accuride Response Br.").

The Government and Accuride fail to demonstrate that the U.S. Department of Commerce's ("Commerce") misinterpretation of the scope in its final scope ruling issued on June 7, 2023, ("*Final Scope Ruling*") should be sustained. As established by Commerce's final scope determination issued in the original antidumping duty ("AD) and countervailing duty ("CVD") investigations on March 21, 2019 ("*Final Scope Decision Memo*"), rather than defer consideration of the respondent's argument that wheels made in third countries with rims or discs from China (but not both) are outside the scope, Commerce agreed with the respondent and added language ("from China") to make this clear. *See* Appx79, Appx82. Moreover, the exclusion of wheels with rims or discs from China is consistent with the plain language of the third-country processing provision because this provision can apply to a multitude of other productions scenarios that have not already been reviewed by Commerce, such as Chinese-origin rims finished or painted in a third country,

1

Chinese-origin discs finished or painted in a third country, or **parts** of Chinese-origin rims and **parts** of Chinese-origin discs that are finished and painted in a third country.

In the alternative, should this Court affirm Commerce's determination that wheels made in Thailand with rims or discs from China are within scope, the Government and Accuride fail to demonstrate that Commerce lawfully directed CBP to continue to suspend the liquidation of imports entered before importers had adequate notice of potential AD/CVD liability. Asia Wheel does not seek certainty of scope coverage, but rather adequate notice, a fundamental due process principle that Commerce may not violate when applying its regulations. Courts have held that adequate notice requires more than Commerce's statement of intent to consider a scope question at a later date, which is at most what occurred here during the original AD/CVD investigations.

Finally, contrary to the Government's and Accuride's argument, it is Commerce, not U.S. Customs and Border Protection ("CBP"), that is the ultimate authority on the scope of AD/CVD orders. This authority includes deciding not just **whether** merchandise is within scope but **when** imports of the merchandise first became subject to AD/CVD orders. Thus, Commerce must instruct CBP that imports of wheels made in Thailand from rims or discs from China (but not both) were not "covered merchandise" before the initiation of its scope inquiry in this case

and instruct CBP to stop suspending the liquidation of such imports entered before the initiation date.

## ARGUMENT

As discussed below, the Government and Accuride fail to demonstrate that the following decisions by Commerce in the *Final Scope Ruling* should be sustained as supported by substantial evidence and/or in accordance with law: (1) Commerce's misinterpretation of its own scope determination in the original AD/CVD investigations, which indicates that wheels manufactured in a third country with only Chinese-origin discs *or* rims (not both) are outside the scope; and (2) Commerce's unlawful continuation of CBP's prior suspension on liquidation of imports entered before importers had adequate notice of AD/CVD liability.

## I. THE GOVERNMENT AND ACCURIDE FAIL TO DEMONSTRATE THAT COMMERCE'S MISINTERPRETATION OF THE SCOPE SHOULD BE SUSTAINED

The Government and Accuride fail to demonstrate that Commerce's misinterpretation of the scope should be sustained. The record demonstrates that Commerce found that both the rims and discs must originate in China for steel wheels assembled in third countries to fall within the scope of the *AD/CVD Orders*, and did not defer that question as claimed by the Government and Accuride. Moreover, contrary to the Government's and Accuride's arguments, excluding wheels made in third-countries with rims or discs from China (but not both) is not

3

inconsistent with the third-country processing provision because that provision continues to cover other production scenarios that Commerce has not already addressed. Finally, rather than skip a required step in the analysis of ambiguous scope language as claimed by Accuride, Commerce acknowledged in the *Final Scope Ruling* that it considered a (k)(1) source in its analysis of the third-country processing provision of the scope.

   A.   **Commerce Determined in the Original AD/CVD Investigations that Wheels Made in a Third Country with Discs or Rims from China (But Not Both) Are Outside the Scope.**

Commerce's scope determination in the original AD/CVD investigations – a (k)(1) source that Commerce considered in the contested scope ruling, as required by 19 C.F.R. § 351.225(k)(1) – demonstrates that Commerce previously determined that both the rims and discs must originate in China for steel wheels produced in third countries to fall within the scope of the *AD/CVD Orders*. Commerce added language to clarify this after the respondent Zhejiang Jingu pointed out that Petitioner's proposed third-country processing provision as written was overly broad – important context that the Government and Petitioner disavow in their briefs.

As described in Asia Wheel's opening brief, in the original investigations, Commerce discussed the third-country processing provision and added clarifying language that steel wheels must be made with rims and discs "***from China***" in response to Zhejiang Jingu's argument that without such language the scope would

impermissibly capture steel wheels that originate in third countries (not China). *See* Plaintiff-Appellant's Opening Brief, (ECF No. 13) ("Asia Wheel Opening Br.") at 4–6, 19–22. In the original AD/CVD investigations, Zhejiang Jingu argued that Petitioner's proposed third-country processing provision language was "overly broad and vague" because "the language d{id} not explicitly require that ***both the rim <u>and</u> disc be produced in China*** for China to be considered the origin." Appx78 (emphasis added). In response, Commerce stated that it "***agree{d} with Zhejiang Jingu*** that the proposed scope amendment should include further clarifying language{,}" Appx82 (emphasis added), and added the "***from China***" requirement to the scope based on its understanding that Petitioners were "requesting that ***rims and discs from China*** that have been further processed in a third country into finished steel wheels be included within scope." *Id.* By making this change, Commerce clarified that it is necessary for both the rims ***and*** discs of truck wheels made in third countries to originate "from China" for such wheels to be within scope.

Both the Government and Accuride argue that Asia Wheel exaggerates the meaning of Commerce's response during the investigations to Petitioner's request to amend the scope language to include the third-country processing provision and Zhejiang Jingu's argument resulting in Commerce's amendment adding the "from China" requirement to Petitioner's proposed third-country processing language. *See* Gov't Response Br. at 29–30; Accuride Response Br. at 24–26. They argue that, in

agreeing with Zhejiang Jingu's arguments and adding the "from China" language, Commerce merely confirmed that third-country wheels made with rims and discs from China were within scope, and did not confirm that third-country wheels made with rims *or* discs from China were outside the scope. *See id.* This argument, however, is unsupported by the record as recounted above. In particular, Commerce added the "from China" requirement to implement Zhejiang Jingu's request to clarify the scope language to "explicitly require that both the rim and disc be produced in China for China to be considered the country of origin." Appx78, Appx82. Moreover, Commerce noted that the **entire** third-country processing provision was included in response to ***Petitioner's*** comment that "Commerce should clarify the scope to include steel wheels processed in a third country ***using rims and discs from China*** . . . ." Appx077 (emphasis added).

For these reasons, Commerce's scope determination in the AD/CVD investigations leads to the unavoidable conclusion that the agency previously interpreted the third-country-processing provision to mean that truck wheels manufactured in a third country with rims *or* discs from China – but not both – are outside the scope of the *AD/CVD Orders*. Any conclusion otherwise is unreasonable and inconsistent with Commerce's prior scope determination and, thus, unsupported by substantial evidence.

**B.** **The Record Lacks Substantial Evidence for Commerce's Claim That It Deferred Consideration of the "Rims or Discs from China" Scope Issue in the Original AD/CVD Investigations**

A review of the record demonstrates that Commerce did not defer consideration of the "rims or discs from China" scope issue in the original AD/CVD investigations, and thus Commerce's conclusion to the contrary in the *Final Scope Ruling* is unsupported by substantial evidence. Contrary to the Government's argument, Commerce's passing reference to its inherent authority to conduct a substantial transformation analysis does not detract from the conclusion that Commerce determined that wheels made in third countries with rims or discs from China (but not both) are outside the scope. Contrary to Accuride's argument, the record demonstrates that Commerce already had resolved the question of whether third-country wheels made from rims or discs from China, but not both, during the original investigations.

First, Commerce's passing reference during the original AD/CVD investigations to its practice of conducting a substantial transformation analysis to address country-of-origin issues on a case-by-case basis does not invalidate its conclusion that wheels made in third countries must include rims and discs from China to be within scope. The Government makes much of Commerce's reference to its practice of using a substantial transformation analysis to address country-of-origin issues on a case-by-case basis, which is what the Government purports

Commerce did when it reviewed the wheels at issue in this appeal. Gov't Response Br. at 30–32 (citing Appx81). While Commerce left itself with room to consider other country-of-origin issues using a substantial transformation analysis, *see* Appx81, this does not contradict Commerce's conclusion in the original investigations that wheels made in third countries must include Chinese-origin rims and discs to fall within the scope. *See* Appx78, Appx82. It is unremarkable that Commerce in the original AD/CVD investigations recognized its inherent authority to conduct a substantial transformation analysis to address production scenarios it had not yet contemplated. Commerce's statement that it would consider other production scenarios on a case-by-case basis does not change the fact that it already considered the scenario presented by the mixed-origin wheels at issue in this appeal.

Second, contrary to Accuride's argument, Asia Wheel does not dispute that Commerce may draft the scope of AD/CVD orders in general terms and consider new factual scenarios as they arise. *See* Accuride Response Br. 22. However, that was not the case here. Instead, as discussed, Commerce already had considered whether third-country wheels must be made with rims ***and*** discs from China to fall within scope, and answered in the affirmative, as evidenced by its addition of language to make clear that "***rims and discs <u>from China</u>*** that have been further processed in a third country into finished steel wheels be included within scope." Appx82 (emphasis added).

For these reasons, substantial evidence does not support Commerce's conclusion in the *Final Scope Ruling*, *see* Appx26, that Commerce deferred consideration of the "rims or discs" scope issue in the original AD/CVD investigations.

### C. Excluding Wheels Made with Rims or Discs from China (But Not Both) Is Not Inconsistent with the Full Scope Language

Contrary to the Court of International Trade's ("CIT") decision and Defendant-Appellees' arguments, Asia Wheel's interpretation of the scope language as excluding third-country wheels made with rims or discs from China (but not both), does not ignore the full third-country processing provision in the scope description. Both the Government and Accuride argue that the CIT was correct in holding that Asia Wheel's interpretation of the scope language would render the "including, but not limited to" phrase and the "or any other processing that would not otherwise remove the merchandise from the scope of the investigation if performed in China" phrase impermissibly superfluous. *See* Gov't Response Br. at 27–28, n.12 (citing Appx7), 30; Accuride Response Br. at 15–21 (citing Appx7). This is incorrect.

Regarding the "including, but not limited to" phrase, acknowledging that Commerce has addressed one production scenario (wheels made in third-countries with rims or discs from China but not both), does not render the "including but not limited to" language in the scope superfluous because there are other production scenarios that could be covered by this provision. Such other production scenarios

include Chinese-origin rims finished or painted in a third country, Chinese-origin discs finished or painted in a third country, or *parts* of Chinese-origin rims and *parts* of Chinese-origin discs that are finished and painted in a third country.

Moreover, the "any other processing" phrase does not apply to the facts at issue in this case. "The scope includes rims, discs, and wheels that have been further processed in a third country, including, but not limited to . . . any other processing that would not otherwise remove the merchandise from the scope of the investigations if performed in China." Here, however, the only wheel component originating from China that Asia Wheel processes in Thailand is the Chinese-origin disc. *See* Appx114-122 (detailed description of Asia Wheel's production method and production flowchart). In Thailand, Asia Wheel does not merely process Chinese-origin discs; it also manufactures rims, welds the rims and Chinese-origin discs, and coats the resulting wheels. *See id*. Therefore, the "any other processing" phrase is inapplicable to the scope question raised in this case.

In sum, consideration of the full scope language in context demonstrates that wheels made in third countries with rims or discs from China (but not both) must be excluded. Consequently, Commerce's scope ruling is unsupported by substantial evidence.

### D. Contrary to Accuride's Argument, Commerce <u>Did</u> Analyze the (k)(1) Sources, as Required by the Regulations

Contrary to Accuride's argument, the record demonstrates that Commerce reviewed a (k)(1) source – namely, the *Final Scope Decision Memo* from the original AD/CVD investigation – in the process of interpreting the meaning of the third-country processing provision of the scope. Despite this, Accuride argues that Commerce "was explicit in its ruling it was *not* performing a k(1) analysis under that regulation" because Commerce was not determining whether a form of merchandise falls within the scope coverage but rather whether the merchandise originated from the subject country. Accuride's Response Br. at 12–15 (citing Appx042). Accuride is wrong.

As an initial matter, Accuride asserts, without support, that Commerce need only consider the (k)(1) sources when "determining whether a *form* of merchandise falls within the scope coverage." Accuride's Response Br. at 13. In this case, however, the scope of the *AD/CVD Orders* included a third-country processing provision. *See AD/CVD Orders*, 84 Fed. Reg. at 45,954. Thus, Commerce was required to consult (k)(1) sources to discern this provision's meaning unless the text of the provision is unambiguous. In fact, Commerce ***did*** review the *Final Scope Decision Memo* in the context of interpreting the third-country processing provision in the *Final Scope Ruling*. *See* Appx025-027. Thus, Accuride's argument is plainly wrong.

## II. THE GOVERNMENT AND ACCURIDE FAIL TO DEMONSTRATE THAT COMMERCE LAWFULLY DIRECTED CBP TO CONTINUE TO SUSPEND LIQUIDATION OF IMPORTS ENTERED BEFORE IMPORTERS HAD ADEQUATE NOTICE OF AD/CVD LIABILITY

In the alternative, if the Court affirms Commerce's scope ruling, the Government and Accuride have not shown that Commerce lawfully instructed CBP to continue suspending the liquidation of imports of the merchandise in question that entered before importers received adequate notice of AD/CVD liability. First, the Government and Accuride mischaracterize Asia Wheel's "lack of adequate notice" argument. Asia Wheel's argument is not focused on certainty of scope coverage, but rather invokes the fundamental due process principle of adequate notice or fair warning. Moreover, Commerce may not apply its regulation, 19 C.F.R. § 351.225(l), if doing so would violate the importers' due process right to adequate notice. Lastly, it is Commerce – not CBP – that has the final authority to determine the scope of AD/CVD orders, as recognized by the EAPA, including *when* merchandise becomes subject to those orders. Here, because importers lacked adequate notice that wheels made in Thailand with rims or discs from China (but not both) are "covered merchandise," Commerce must instruct CBP that imports of such wheels entered before the contested scope inquiry began are not covered merchandise and instruct CBP to terminate its prior suspension of liquidation under the EAPA.

**A.** **The Government and Accuride Mischaracterize Asia Wheel's Arguments Regarding Adequate Notice**

The Government and Accuride mischaracterize Asia Wheel's arguments regarding adequate notice. The Government and Accuride first suggest that Asia Wheel demands certainty of scope coverage, when in fact Asia Wheel seeks adequate notice to importers that certain products fall within the scope of the *AD/CVD Orders*. Similarly, the Government and Accuride claim that Asia Wheel's argument regarding adequate notice is essentially the same as its argument about the scope coverage. To the contrary, Asia Wheel's "adequate notice" argument is made in the alternative and addresses the timing of the imposition of duties, not the scope coverage itself.

First, the Government and Accuride assert that adequate notice does not require certainty and mistakenly suggest that Asia Wheel seeks certainty of scope coverage. *See* Gov't Response Br. at 37–38; Accuride Response Br. at 27–29. Asia Wheel does not dispute that the scope of AD/CVD orders are usually drafted in general terms, nor does Asia Wheel expect Commerce to contemplate every possible scenario under which the orders would apply at the investigation stage. Although scope questions may arise that Commerce has not contemplated previously, that is not what happened here.

Rather, Commerce contemplated and addressed the question of "rims or discs from China" wheels in the original AD/CVD investigations. The  In fact, the

respondent Zhejiang Jingu pointed to Petitioner's proposed scope language in original investigation as potentially confusing because "the language does not explicitly require that ***both the rim <u>and</u> disc be produced in China*** for China to be considered the country of origin." Appx78–79. In response, Commerce "agree{d} with Zhejiang Jingu that the proposed scope amendment should include further clarifying language" and added the phrase "***from China***" to the third-country processing provision based on its understanding that Petitioners' proposed third-country processing provision "requesting that ***rims <u>and</u> discs from China*** that have been further processed in a third country into finished steel wheels be included within scope." Appx082 (emphases added); *see also id.* at Appx089.

Accuride argues that the Asia Wheel should have requested a scope ruling before shipping their wheels made with rims or discs from China based on the "warnings" provided by Commerce in its *Final Scope Decision Memo* that "further analysis would be required to address the scope coverage of wheels completed from mixed-origin components." Accuride Response Br. at 7, 30. But during the AD/VD investigations the respondent ***already had requested clarification*** of the scope with respect to the specific question of whether wheels made in third countries must include both rims and discs from Thailand, and flagged for Commerce that there might be confusion based on Petitioner's proposed language unless Commerce confirmed this requirement. Appx78–79. In response, Commerce agreed that the

third-country processing provision needed further clarification to ensure that the third-country processing provision reflected Petitioner's request that "***rims and discs from China*** that have been further processed in a third country into finished steel wheels be included within scope." Appx82 (emphases added). Asia Wheel was not obliged to repeat a question that had already been asked, and reasonably relied on Commerce's answer to conclude that "rims or discs from China" wheels are outside the scope. The importers lacked adequate notice that Commerce would reverse itself in a subsequent scope ruling and determine that such wheels fall within the scope of the *AD/CVD Orders*. Thus, Commerce's failure to instruct CBP to terminate the suspension of imports made before the initiation of the scope inquiry was contrary to law.

Second, Defendant-Appellees misunderstand how Asia Wheel's argument regarding adequate notice is distinct from its argument that wheels made with rims or discs from China are outside the scope. Asia Wheel is making this argument in the alternative. Adequate notice concerns ***when*** imported merchandise can lawfully be subject to AD/CVD duties – not whether the merchandise falls within the scope. Should the Court affirm Commerce's scope ruling, imports of wheels made in third-countries with rims or discs from China that entered before the initiation date of the scope inquiry cannot lawfully be subject to AD/CVD duties, because such imports

were made before importers had adequate notice that the wheels fall within the scope.

**B.     Commerce Cannot Lawfully Apply Its Own Regulations in a Manner that Would Violate the Broader Due Process Principle of Adequate Notice**

Despite recognizing the due process principle that requires Commerce to provide importers fair warning of potential AD or CVD liability before liquidation of imports can be suspended, the Government and Accuride wrongly argue that Commerce's regulation, 19 C.F.R. § 351.225(l) controls Commerce's conduct in this case.   Commerce, however, cannot apply this regulation when doing so would violate the broader due process principle of adequate notice.

Courts have recognized that there is a "broader due-process principle that, before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct [the order or regulation] prohibits or requires.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300-01 (Fed. Cir. 2013) (citations omitted).   In AD/CVD proceedings, this principle requires Commerce to provide fair warning of potential AD or CVD liability before the liquidation of imports can be suspended and the imposition of duties can begin.   *See Tai-Ao Aluminum (Taishan) Co. v. United States,* 983 F.3d 487, 495 (Fed. Cir. 2020) ("*Tai-Ao II*"); *see also* Gov't Response Br. at 39 ("Asia Wheel is correct in its recitation

of the general principles of notice articulated in *Tai-Ao Aluminum Co. v. United States* . . . .").  To determine whether an interested party has "adequate notice" prior to initiation of a scope inquiry, the court inquires whether the scope of the orders "may be reasonably interpreted to include" the products at issue.  *Mid Continent Nail Corp.*, 725 F.3d at 1300–01 (Fed. Cir. 2013); Appx12.

The Government and Accuride argue that Commerce had to continue the suspension of liquidation initiated by CBP's interim measures during its EAPA investigation, per the terms of Commerce's suspension regulation, 19 C.F.R. § 351.225(l).  As explained in *Mid Continent Nail*, however, Commerce may not enforce a regulation by means of a monetary sanction if enforcing it would violate the due process principle of "adequate notice."  *Mid Continent Nail Corp.,* 725 F.3d at 1300–01.  That is exactly what occurred here.

The facts demonstrate that neither Asia Wheel nor importers had adequate notice that third-country wheels made with rims or discs from China (but not both) could be within the scope of the *AD/CVD Orders* until the initiation of Commerce's scope inquiry.  As described above, Commerce's statements during the original AD/CVD investigations strongly indicated that Commerce had determined that third-country wheels made of rims or discs from China were outside the scope. Appx82.  Asia Wheel did not even have notice that CBP had initiated an EAPA investigation to address an allegation that Zhejiang Jingu was transshipping Chinese-

origin truck wheels through its Thai affiliate Asia Wheel until August 18, 2020. Appx143–150. This allegation did not address Thai wheels made with rims or discs from China, nor was the ensuing EAPA investigation initiated on this basis. *See id.*

On February 11, 2021, Asia Wheel requested a scope ruling from Commerce to confirm that certain truck wheels produced by Asia Wheel in Thailand were outside the scope of the *AD/CVD Orders*, among them third-country wheels made with rims or discs from China but not both. Appx62. Within 45 days of receiving the scope ruling application, Commerce may (i) issue a final ruling "based solely on the application and the descriptions of the merchandise referred to in paragraph (k)(1) of this section," as to "whether a product is included within the scope of an order{,}" 19 C.F.R. 351.225(c)(ii)(C)(2), (d), or "initiate a scope inquiry{,}" 19 C.F.R. 351.225(c)(ii)(C)(2), (e). Given Commerce's statements in the original AD/CVD investigations, Asia Wheel and importers reasonably expected that Commerce would issue a final scope ruling finding that third-country wheels made with rims or discs from China (but not both) were outside the scope without initiating a scope inquiry. Thus, it was not until May 12, 2021, when Commerce initiated a scope inquiry in response to Asia Wheel's request that Asia Wheel and importers received adequate notice that imports of third-country wheels made with rims or discs from China (but not both) could be subject to the *AD/CVD Orders*.

By applying the suspension regulation at § 351.225(l) in this case and attaching AD and CVD liability to imports that had entered before initiation of the underlying scope ruling proceeding (*i.e.*, by means of a monetary sanction), Commerce failed to provide importers with fair warning of potential AD or CVD liability and, thus, violated the due process principle recognized by this court in *Tai-Ao II* and *Mid Continent*. *See Tai-Ao II*, 983 F.3d at 495; *Mid Continent Nail Corp.*, 725 F.3d at 1300–01. Consequently, Commerce's actions were contrary to law.

The Government and Accuride assert that Commerce's statements in the original AD/CVD investigation were sufficient to provide fair warning to importers of potential AD or CVD liability. Gov't Response Br. at 38–40; Accuride Response Br. at 29–30. The Government argues that the CIT properly distinguished *Tai-Ao*, from the present case because Commerce did not "expand{} the scope of its inquiry{,}" and "Commerce's statements in the Final Scope Ruling did not contradict statements made by Commerce in the investigations." *See* Gov't Response Br. at 40–41 (citing Appx14). In *Tai-Ao II*, however, Commerce did not make contradictory statements in the anticircumvention proceeding at issue but instead answered a question that it had deferred to a later date.

When initiating the anticircumvention inquiry at issue in *Tai-Ao II* with respect to one specific producer, Commerce explicitly deferred the question of whether to expand its anticircumvention inquiry to all Chinese producers to a later

date. *See Aluminum Extrusions from the People's Republic of China,* 81 Fed. Reg. 15,039, 15,042 (Dep't Commerce Mar. 21, 2016) ("*Tai-Ao Initiation Notice*") ("The Department **intends to consider** whether the inquiry should apply to all imports of extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy and are heat-treated, regardless of producer, exporter, or importer, from the PRC.") (emphasis added). Commerce later addressed the question and decided to apply its affirmative preliminary circumvention determination to all Chinese producers. *See Tai-Ao II*, 983 F.3d at 496 (citing *Aluminum Extrusions from the People's Republic of China*, 81 Fed. Reg. 79,444, 79,445 (Dep't of Commerce Nov. 14, 2016) ("*Tai-Ao Preliminary Determination*")). The *Tai-Ao II* Court held that importers did not receive "fair warning" until Commerce actually answered the deferred question and applied AD/CVD to companies other than the initial producer. *Tai-Ao II*, 983 F.3d at 494-95. Thus, *Tai-Ao II* confirms that Commerce's statements of intent to consider the potential application of AD/CVD in the future do not, by themselves, constitute fair notice. *See Tai-Ao Aluminum (Taishan) Co. v. United States*, 391 F. Supp. 3d 1301, 1314–15 (Ct. Int'l Trade 2019) ("*Tai-Ao I*"); *Tai-Ao II*, 983 F.3d at 495.

*Tai-Ao II* confirms the lack of fair warning here. At most, Commerce's statement in the *Final Scope Decision Memo* that it "has relied on a substantial transformation analysis to address country-of-origin issues, {but} the decision to

conduct such an analysis is contingent upon the facts and circumstances of a particular case{,}" Appx81, suggested that Commerce might in the future revisit the question of substantial transformation and third-country wheels made from a "mix of rim and disc parts from China and a third-country." This is nothing more than the "inten{t} to consider" found to constitute inadequate notice in *Tai-Ao II*. *See Tai-Ao II,* 983 F.3d at 494-95. Thus, in accordance with this court's holding in *Tai-Ao II*, Commerce's statements in the original AD/CVD investigations failed to provide fair warning to importers that wheels made in Thailand with rims or discs from China were subject to the *AD/CVD Orders*. Commerce's conclusion otherwise in its *Final Scope Ruling*, *see* Appx57–58, is unsupported by substantial evidence. Moreover, importers lacked adequate notice until Commerce decided to revisit its scope determination from the original AD/CVD investigations by initiating a scope inquiry. Consequently, Commerce's violated the due process principle of adequate notice reaffirmed in *Tai-Ao II* when it applied 19 C.F.R. § 351.225(l) to continue to suspend liquidation of imports of "rims or discs from China" wheels entered before the initiation date of the scope inquiry and its actions were contrary to law.

### C. Commerce, Not CBP, Has the Ultimate Authority To Determine Not Just Whether But *When* Imported Merchandise Became Subject to an AD/CVD Order

The Government and Accuride wrongly maintain that Commerce lacked the authority to instruct CBP to terminate its prior suspension of liquidation because

CBP suspended liquidation pursuant to its independent authority under the EAPA, 19 U.S.C. § 1517(e). While CBP may have had initial authority to suspend liquidation under the EAPA, Commerce has the ultimate authority to determine whether – and *when* – imported merchandise is subject to an AD/CVD order, as recognized by the EAPA itself. Here, in accordance with that authority, Commerce was bound by the due process principles of adequate notice, to instruct CBP that wheels made in Thailand from "rims or discs from China" did not become "subject to" the *AD/CVD Orders* – and, thus, were not "covered merchandise" under 19 U.S.C. § 1517(a)(3) – until the initiation date of the scope inquiry.

The Government and Accuride argue that Commerce had no choice but to continue CBP's prior suspension of liquidation pursuant to its suspension regulation, 19 C.F.R. 351.225(l). *See* Gov't Response Br. at 34–35; Accuride Response Br. at 31–34. This is incorrect. As discussed above, rather than blindly apply its suspension regulation in violation of due process, Commerce should have instructed CBP that imports of wheels made from rims or discs from China that entered before the initiation date of the scope inquiry, were *not* "covered merchandise" for lack of adequate notice.

Relatedly, the Government and Accuride wrongly contend that Commerce cannot interfere with CBP's independent authority under the EAPA to suspend the liquidation of imports where CBP has a reasonable suspicion of AD/CVD evasion.

*See* Gov't Response Br. at 36–37, 41; Accuride Response Br. at 31–38. But the Government and Accuride once again ignore that Commerce, not CBP, is the ultimate authority on the scope of an AD/CVD order, as acknowledged by the covered merchandise referral mechanism built into the EAPA. The EAPA recognizes that Commerce has the ultimate authority to determine the scope of AD/CVD orders, *see* 19 U.S.C. § 1517(b)(4)(a)(i) (instructing CBP to refer cases where it is unable to determine if merchandise is covered merchandise to Commerce as the administering authority), which includes both whether the merchandise is within scope and ***when*** it is subject to an AD/CVD order, *see* 19 U.S.C. § 1517(a)(3) (defining "covered merchandise" to mean merchandise that is "subject to" an AD/CVD order). As the ultimate authority on the scope of the *AD/CVD Orders*, Commerce had the authority – and was bound by the due process principle of adequate notice – to instruct CBP accordingly. *See Tai-Ao II*, 983 F.3d at 495; *Mid Continent Nail Corp,* 725 F.3d at 1301; Appx12.

Moreover, Accuride's reliance on *Star Pipe Prod. v. United States*, 981 F.3d 1067, 1078 (Fed. Cir. 2020) to suggest that CBP has independent enforcement authority to suspend liquidation is misplaced. *See* Accuride's Response Br. at 35–36. There, the Court drew a distinction between "Commerce's authority to assess duties in the context of a scope inquiry" and CBP's authority under "{19 U.S.C.} *§ 1592* to assess ***penalties*** for fraudulent or negligent violations" of customs law. *Star*

*Pipe*, 981 F.3d at 1079 (emphasis added).  Here, in contrast, the issue raised is Commerce's authority to assess AD/CVD duties in the context of a scope inquiry and CBP is ***not*** assessing penalties under §1592 for fraudulent or negligent violations of customs law.  Thus, *Star Pipe* is inapposite.

Accuride also cites *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1351 (Ct. Int'l Trade 2021) for the proposition that "CBP's authority to suspend liquidations is not bound by Commerce's separate authority to take the same action in different circumstances."  Accuride Response Br. at 37.  In *Diamond Tools*, however, the CIT did not address the "broader due-process principle" that importers must have fair warning before their imported merchandise is subject to AD/CVD liability.  *See Tai-Ao II*, 983 F.3d at 495.  Nor did the court hold that CBP has the authority to disagree with a scope ruling made by Commerce.  Nor is the authority to suspend liquidation, the same thing as the authority to determine which imports are "covered merchandise." *See* Gov't Response Br. at 36–37; Accuride Response Br. at 38.  Commerce has the ultimate authority to determine which imports are "covered merchandise" – not CBP – as reflected in the EAPA itself which provides for covered merchandise referrals, as discussed above.  *See* 19 U.S.C. § 1517(a)(3), (b)(4)(a)(i).  Accordingly, Commerce should have instructed CBP that imports entered before the initiation date of the scope inquiry are not "covered merchandise" because the importers lacked adequate notice until that date.

Finally, in attempting to distinguish *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1267 (Ct. Int'l Trade 2022) by noting that it related to a negative scope determination, the Government and Accuride miss the point. *See* Gov't Response Br. at 41; Accuride Response Br. at 36–37. The general proposition articulated in that case – that Commerce is the administering authority of the scope of the orders not CBP – stands regardless of whether Commerce's scope determination is affirmative or negative. *See Aspects Furniture*, 607 F. Supp. 3d at 1267–68; *see also* Asia Wheel Opening Br. at 40–41.[1]

---

[1] In any event, CBP's prior suspension of liquidation as "interim measures" under the EAPA (19 U.S.C. § 1517(e)) was unlawful because CBP failed to give the importers under investigation any opportunity to submit evidence or offer arguments in their defense prior to its imposition of interim measures. *See Superior Commercial Solutions LLC v. United States*, Court No. 24-cv-00052-JCG, Slip Op. 25-147 at 26 (Nov. 26, 2025). CBP did not inform the importer of the EAPA investigation until after it had imposed interim measures. *See* Appx143-150.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Commerce's *Final Scope Ruling* is unsupported by substantial evidence on the record and otherwise not in accordance with law. Plaintiff-Appellant respectfully requests that this Court vacate or reverse the CIT's decision on these issues, and remand to Commerce with instructions to issue a revised determination, consistent with the opinion of this Court.

Respectfully submitted,

 /s/ Jay C. Campbell
Jay C. Campbell
Cristina Cornejo

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to Plaintiff-Appellant Asia Wheel Co., Ltd.

January 20, 2026

(Form 19)

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

## CAFC Court No. 2025-1694

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 5,694 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: January 20, 2026

Signature: _____/s/ Jay C. Campbell_____

Name: _____Jay C. Campbell_____